**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SANCHEZ JOHNSON, individually and on behalf of all others similarly situated,

                Plaintiff,

    v.

INSIDER INC.,

                Defendant.

Civil Action No.:  1:22-cv-06529-AT

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Philip L. Fraietta
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jarisohn@bursor.com
        pfraietta@bursor.com

**GIRARD SHARP LLP**
Adam E. Polk*
Simon Grille*
Jessica Cook*
Kimberly Mac*ey
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com
kmacey@girardsharp.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
gklinger@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
nsuciu@milberg.com

*Pro Hac Vice*

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

ARGUMENT ..............................................................................................................................3

I.   THE FIRMS HAVE THOROUGHLY IDENTIFIED AND INVESTIGATED
     THE CLAIM .......................................................................................................................5

II.  PROPOSED CO-LEAD INTERIM CLASS COUNSEL IS EXPERIENCED
     IN HANDLING CLASS ACTIONS AND OTHER COMPLEX LITIGATION ..............6

III. THE FIRMS ARE FAMILIAR WITH THE APPLICABLE LAW AND FACTS..........15

IV.  THE FIRMS WILL COMMIT ALL NECESSARY RESOURCES TO
     REPRESENTING THE CLASS........................................................................................16

CONCLUSION..........................................................................................................................18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bernstein v. Cengage Learning, Inc.*,
   2019 WL 6324276 (S.D.N.Y. Nov. 26, 2019) ...................................................... 4, 5

*Billitteri v. Securities America, Inc.*,
   2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ......................................................... 18

*Boelter v. Hearst Commcn's, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................................... 8

*Boelter v. Hearst Commcn's, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ................................................................... 8

*Buonasera v. Honest Co., Inc.*,
   318 F.R.D. 17 (S.D.N.Y. 2016) ......................................................................... 4, 5

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ....................................................................... 6, 7

*Four In One Co. v. SK Foods, L.P.*,
   2009 WL 747160 (E.D. Cal. Mar. 20, 2009) ......................................................... 3

*Hart v. BHH, LLC*,
   2017 WL 2912519 (S.D.N.Y. July 7, 2017) ......................................................... 6

*In re Lenovo Adware Litigation*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ....................................................... 13

*In re Lenovo Adware Litigation*,
   2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ....................................................... 13

*In re Municipal Derivatives Antitrust Litig.*,
   252 F.R.D. 184 (S.D.N.Y. 2008) ......................................................................... 4

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ........................................................................... 12

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015) ............................................................. 6

*In re SLM Corp. Sec. Litig.*,
   2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ......................................................... 12

*In re U.S. Office of Pers. Mgt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ............................................................................. 12

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ...................................................................... 13

*In re Yahoo Mail Litig.*,
   2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ...................................................... 18

*Karpilovsky v. All Web Leads, Inc.*,
   2018 WL 3108884 (N.D. Ill. June 25, 2018) ...................................................... 11

*Roe v. Arch Coal, Inc.*,
   2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ........................................................ 4

*Southeast Mo. Hosp. v. C.R. Brand, Inc.*,
   2007 WL 4191978 (E.D. Mo. Nov. 21, 2007) ...................................................... 4

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................................... 7

*Tolmasoff v. General Motors, LLC*,
   2016 WL 3548219 (E.D. Mich. June 30, 2016) .................................................... 4

**STATUTES**

18 U.S.C. § 2710 ...................................................................................................... 1, 11

18 U.S.C. § 2710(c)(2) ................................................................................................... 2

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... passim

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g)(3) and the Court's September 6, 2022 Order (ECF No. 9), Plaintiffs Sanchez Johnson, Darmel Roby, Jennifer Juenke, Jamie Spritzer and Timothy Stokes ("Plaintiffs") move for an order appointing Bursor & Fisher, P.A. ("Bursor"), Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") and Girard Sharp LLP ("Girard") as co-lead interim class counsel, and Lowey Dannenberg P.C. ("Lowey", and together with "Bursor," "Milberg," and "Girard," the "Firms") as liaison counsel.  Bursor, Milberg, and Girard have significant consumer class action experience, knowledge of the applicable law and substantial resources that will be applied to litigate this nationwide privacy class action under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").  Lowey also has significant relevant experience, including in this District.  The Firms have a proven track record of success in similar data privacy cases that will benefit the proposed class in this case.

The litigation centers on Insider, Inc.'s ("Insider") transmission of its digital users' personally identifiable information ("PII") and video-viewing preferences to Meta Platforms, Inc. ("Meta") without users' consent. Delivering adequate and timely relief to these users will require experienced, focused leadership in all phases of this class action litigation through trial. The Firms will prosecute this case aggressively, taking an efficient approach to case management while drawing upon available resources and expertise as warranted by the needs of the case. To ensure responsible and non-duplicative work, we submit with this application a proposed protocol for time and expense management that other courts have entered in similar complex litigation.

For the reasons explained further below, Plaintiffs respectfully request that the Court enter proposed order making these appointments.

## FACTUAL AND PROCEDURAL BACKGROUND

Insider, through its website, www.businessinsider.com ("Business Insider") collects and shares users' personal information with Meta using a "Meta Pixel" or "Pixel"—a snippet of programming code that, once installed on a webpage, sends information to Meta. The information shared with Meta in this case includes the user's Facebook Profile ID and the title of the video that the user watched. A user's Facebook Profile ID is linked to their Facebook profile, which contains a wide range of demographic and other information about that user, including pictures, personal interests, work history, relationship status, and other details.

Insider discloses the user's Facebook Profile ID and viewing content to Meta together in a single, unencrypted transmission, in violation of the VPPA. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any other person— can use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In other words, Insider's use of the Pixel allows Meta to know what video content one of its users viewed on Business Insider.

Business Insider users do not consent to such sharing through a standalone consent form, as required by the Video Privacy Protection Act ("VPPA" or "the Act"). As a result, Insider violates the VPPA by disclosing this information to Meta, and is liable to each class member for statutory damages under 18 U.S.C. § 2710(c)(2).

On August 1, 2022, Plaintiff Johnson filed a Complaint bringing one cause of action against Defendant Insider, Inc. ("Defendant" or "Insider").  Plaintiff Johnson alleges that Insider utilized the Facebook Tracking Pixel and related code on its website, businessinsider.com, and that this web beacon disclosed to Facebook her identity and the videos that she watched, all without her consent.  Based on these facts, Plaintiff Johnson asserts a claim under the Video Privacy Protection Act ("VPPA"). On August 10, Darmel Roby, Jennifer Juenke, Jamie Spritzer

and Timothy Stokes (the "*Roby* Plaintiffs") filed a similar action, *Roby v. Insider, Inc.*, No. 1:22-cv-06834-AT (S.D.N.Y.).

On September 6, 2022, the Court issued an Order (ECF No. 9) stating its intent to consolidate the two related actions, and instructing interested attorneys to "file requests to be appointed Lead Counsel."

## ARGUMENT

The appointment of interim class counsel is recommended early in the litigation, prior to class certification, to protect the interests of the proposed class.  *See* Fed. R. Civ. P. 23(g); *Manual for Complex Litigation* (4th ed. 2004) (the "Manual"). Following the procedures recommended in the Manual, Plaintiffs' counsel in these related actions conferred and were able to "self-organize" for the benefit of Class members, and developed a plan for pursuing their claims against Insider.  *See* Manual § 21.272 (describing this favored "private ordering" method); *see also id.* § 10.22; *Four In One Co. v. SK Foods, L.P.*, No. 2:08-cv-03017-MCE-EFB, 2009 WL 747160, at *2 (E.D. Cal. Mar. 20, 2009) ("Efforts of plaintiffs' counsel to coordinate activities between themselves should be encouraged."). Consistent with the Manual, the Firms' plan also provides for liaison counsel who will serve as a local point of contact for the Court, maintain an up-to-date service list, and otherwise assist in the prosecution of the litigation consistent with the local rules. *See* Manual §§ 10.221, 40.22.

By appointing co-lead class counsel and liaison counsel, the Court will assure the orderly and responsible prosecution of the consolidated action. Rule 23(g)(3) "authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made," Fed. R. Civ. P. 23(g) advisory committee's note (2003), and the rule provides that "[w]hen one applicant seeks appointment as class counsel, the court may appoint that applicant

only if the applicant is adequate . . . ."  Fed. R. Civ. P. 23(g)(2).  Thus, the Court may appoint

interim counsel in the absence of competing applications.  *See, e.g.*, *Southeast Mo. Hosp. v. C.R.*

*Brand, Inc.*, No. 1:07-CV-0031-TCM, 2007 WL 4191978, at *2 (E.D. Mo. Nov. 21, 2007)

(appointing interim class counsel "to clarify who bears the responsibility for protecting the

interests of the putative class" when only one action had been filed and there were no

"overlapping, duplicative, or competing suits pending in other courts."); *Tolmasoff v. General*

*Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *9 (E.D. Mich. June 30, 2016) (appointing

two law firms as interim class counsel where they filed the only two cases and "others may

follow.  Moreover, the Court believes that it would be beneficial to formally identify the counsel

responsible, at this pre-certification stage, for protecting the interests of the putative class

members."); *Roe v. Arch Coal, Inc.*, No. 4:15-CV-1026 (SNLJ), 2015 WL 6702288, at *3 (E.D.

Mo. Nov. 2, 2015) (appointing two law firms as other firms may have been "investigating

whether to file suit" and the litigation "would benefit from designated interim class counsel for

efficient case management."). Designating interim counsel "clarifies responsibility for protecting

the interests of the class during precertification activities, such as making and responding to

motions, conducting any necessary discovery, moving for class certification, and negotiating

settlement."  Manual § 21.11; *accord In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D.

184, 185 (S.D.N.Y. 2008); *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016);

*Bernstein v. Cengage Learning, Inc.*, 2019 WL 6324276, at *2 (S.D.N.Y. Nov. 26, 2019)

("Establishing interim lead counsel in this action will minimize the risk of duplicative filings and

allow the Court to consolidate related filings more efficiently.").

　　　　The Court should "conduct an independent review to ensure that counsel appointed to

leading roles are qualified and responsible, that they will fairly and adequately represent all of

the parties on their side, and that their charges will be reasonable."  Manual § 10.22.  The most

important factor is "achieving efficiency and economy without jeopardizing fairness to parties."

*Id.* § 10.221.  "When appointing interim class counsel, courts generally look to the same factors

used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *Bernstein*, 2019 WL

6324276, at *1) (quoting *Buonasera*, 318 F.R.D. at 18). As such, the Court considers:

>    (i)   the work counsel has done in identifying or investigating
>          potential claims in the action;
>
>    (ii)  counsel's experience in handling class actions, other complex
>          litigation, and the types of claims asserted in the action;
>
>    (iii) counsel's knowledge of the applicable law; and
>
>    (iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1). Each of these considerations, as detailed below, supports the

appointment of Bursor, Milberg, and Girard as co-lead interim class counsel and Lowey as

liaison counsel.

## I.   THE FIRMS HAVE THOROUGHLY IDENTIFIED AND INVESTIGATED THE CLAIM

The Firms' work in identifying and investigating this VPPA litigation demonstrates that

they have and will continue to fairly and adequately represent the proposed Class.  Privacy cases

like this one bring their own set of challenges, and litigating them often entails extensive factual

discovery, retention of multiple experts, and specialized knowledge of complex technology.

Recurring issues of class certification, damages, and injunctive relief require counsel, such as

these Firms, who are well-versed in this practice area and have overcome such hurdles in similar

matters. The Firms have thus far performed the following work in this case:

a)   Investigated the functionality of the Facebook Tracking Pixel;

b)   Confirmed Defendant's use of the Facebook Tracking Pixel and other code on its
     website businessinsider.com;

c) Investigated Plaintiffs' video-watching behavior on businessinsider.com, and Facebook's record of those personal details obtained through the Facebook Tracking Pixel and other code;

d) Investigated legal claims arising from Defendant's use of the Facebook Tracking Pixel and other code;

e) Researched Defendant's corporate structure;

f) Investigated the nature of the challenged conduct at issue here by interviewing dozens of potential clients;

g) Investigated the adequacy of the named Plaintiff to represent the putative class;

h) Conferred with potential consulting experts regarding the technical aspects of Defendant's conduct; and

i) Drafted and filed the Complaint in this action.

Counsel will follow these investigative efforts by pursuing the claims in a targeted, effective manner, benefiting the Class. Hence, the first 23(g) factor favors appointing the Firms.

## II. PROPOSED CO-LEAD INTERIM CLASS COUNSEL IS EXPERIENCED IN HANDLING CLASS ACTIONS AND OTHER COMPLEX LITIGATION

The second factor the court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action."  Fed. R. Civ. P. 23(g)(1)(A)(ii).  These Firms have substantial experience handling consumer class actions involving data privacy issues as well as other complex class actions.  The Firms' attorneys have represented both plaintiffs and defendants in more than 100 class action lawsuits in state and federal courts throughout the United States.  Decl. of Joshua D. Arisohn ("Arisohn Decl.")  Exs. 1, 4-6 (Firm Resumes).

Bursor & Fisher has an extensive and successful history within this District, including certification of nationwide classes in *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) and *Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), as well as New York and California classes in *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015).

As Judge Rakoff recognized in appointing Bursor & Fisher class counsel in *Ebin*, "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. . . .  The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."  *Ebin*, 297 F.R.D. at 566.

Perhaps most importantly, Bursor has substantial experience handling data security and data privacy cases, including in front of this Court.  *See, e.g.*, *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (approving a $50 million cash settlement, negotiated by Bursor & Fisher, of data privacy claims under Michigan law); *In re Michaels Stores Pin Pad Litig.*, No. 11-cv-00350, ECF No. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel and approving a nationwide class settlement on behalf of hundreds of thousands of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information breached as a result); *Moeller v. American Media, Inc.*, No. 16-cv-11367, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (appointing Bursor & Fisher as co-class counsel and approving classwide $7.6 million settlement of data privacy claims under Michigan law); *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812, ECF No. 87 (S.D.N.Y. Feb. 1, 2018) (same, approving classwide settlement of $8.225 million).

As this Court is likely aware, Bursor was lead counsel in *Edwards v. Hearst Communications*, *Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y), a case brought pursuant to Michigan's state analog of the VPPA.  Bursor succeeded in *Hearst*, which ultimately led to one of the largest-ever class action settlements in a data privacy case.  Specifically, Bursor defeated a motion to dismiss premised on issues of first impression such as Article III standing in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), retroactive

application of an amendment to Michigan's statute, and a First Amendment challenge to Michigan's statute. *Boelter v. Hearst Commcn's, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016). From there, Bursor took extensive discovery from the defendant and numerous third parties and upon that factual record won a motion for partial summary judgment for the named plaintiff, while also defeating defendant's motion for summary judgment in all material respects. *Boelter v. Hearst Commcn's, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017).  That success, as well as the evidence uncovered in discovery pertaining to class certification, resulted in a settlement, which this Court approved, that created a $50 million non-reversionary settlement fund. *Edwards v. Hearst Communications*, *Inc.*, 1:15-cv-09279-AT-JLC, ECF No. 314 (S.D.N.Y. Apr. 24, 2019) (Final Judgment and Order of Dismissal with Prejudice).  Critically, Mr. Fraietta, one of the lead Bursor attorneys on this case, was also one of the lead attorneys in the *Hearst* case, and therefore will be able bring his institutional knowledge to this case to make for a more efficient litigation.

Moreover, Mr. Fraietta of Bursor and Mr. Suciu of Milberg were also the lead attorneys in *Gregorio v. Premier Nutrition Corporation*, 1:17-cv-05987-AT (S.D.N.Y.) that resulted in a settlement, which this Court approved, that created a $9 million non-reversionary settlement fund for consumers who purchased allegedly mislabeled protein drinks. *See id.* at ECF No. 101 (S.D.N.Y. Jan. 17, 2019). Bursor & Fisher also negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and second largest classes ever certified, respectively).  Arisohn Decl. Ex. 1.  These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. *Id*.  Moreover, in *Hendricks v. StarKist Co.*, Bursor & Fisher crafted a settlement that resulted in the submission of over 2.4 million claims from class members, the largest number of claims ever submitted in the history of Rule 23 class actions. *Id*.  Bursor & Fisher has

also proven that it can—and will—take cases to trial if necessary, having won multi-million dollar verdicts or recoveries in six of six civil jury trials in consumer class actions since 2008. *Id.* at ¶ 5.  For example, while serving as lead trial counsel in *Thomas v. Global Vision Products, Inc.*, Bursor & Fisher obtained a $50 million jury verdict in favor of the plaintiff and class on a California Consumers Legal Remedies Act claim.  *Id.*  In another example, *Ayyad v. Sprint Spectrum, L.P.*, Bursor & Fisher obtained a $299 million trial verdict for a class of Sprint customers on a claim for unjust enrichment.  *Id.*  And last year, in *McMillion v. Rash Curtis & Associates*, Bursor & Fisher won a class action jury trial for claims under the Telephone Consumer Protection Act and secured a $267 million judgment.  *Id.*

Likewise, since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[1]  Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[2]  The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg has more than 80 attorneys and has offices across the U.S. and the European Union.

As a Partner at Milberg, Mr. Klinger, one of the lead attorneys on this case, has extensive experience serving as leadership in numerous privacy class actions.  In fact, Mr. Klinger is one of the most well-known and respected data privacy attorneys in the United States. He is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of

---

[1] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[2] *See* https://milberg.com/precedent-setting-decisions/page/3/.

Southern California Gould School of Law.  He has settled more than fifty (50) class actions involving privacy violations as lead or co-lead counsel. He is presently litigating more than one hundred class action cases across the country involving privacy violations. Mr. Klinger recently obtained approval of a $35 million privacy class action settlement. *See Boone, et al. v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.). In addition Mr. Klinger has obtained approval of a class-wide settlement valued at $17.6 million for a privacy class action involving more than six million consumers.  *See Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served with Ms. Martin as two of 3 court appointed co-lead counsel).  In addition, Mr. Klinger reached a class-wide settlement for $11 million for a major privacy class action involving more than 4 million consumers. *See Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.).

Mr. Klinger presently serves as one of two Court-appointed Lead Counsel in the privacy case *In re Canon U.S.A. Data Breach Litig.*, No. 1:20-cv-06239-AMD-SJB (S.D.N.Y. filed Dec. 23, 2020). Mr. Klinger was also appointed Co-Lead Counsel in the privacy case of *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involves approximately one million class members and settled on  a class-wide basis for $4.35 million. Mr. Klinger further serves as co-lead counsel in the consolidated privacy litigation styled *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.), which involves more than 2.4 million class members and has settled on a class-wide basis for $4.75 million. Mr. Klinger also serves as appointed co-lead counsel to represent more than 3 million class members in another major privacy class action in the Seventh Circuit. *See In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.).

Simply put, Mr. Klinger and the attorneys at Milberg have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g., In re: Blackbaud Data Privacy* MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a data breach involving millions of consumers); *Jackson-Battle v. Navicent Health, Inc.*, No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. filed Apr. 29, 2020) (appointed Class Counsel in data breach case involving 360,000 patients; settlement valued at over $72 million); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (appointed Class Counsel; settlement value of over $13 million).[3]

Mr. Klinger has also successfully litigated privacy class actions through class certification. In *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id.*

Similarly, Girard Sharp's experience in the efficient and effective management of class litigation, from inception through trial, will benefit all users of Business Insider when it comes to selecting plaintiffs, taking discovery, moving to certify the class, defending a certification order on appeal, litigating dispositive motions and, ultimately, proving the central issue in the case: Insider violated the VPPA, entitling each class member to statutory damages under 18 U.S.C. § 2710. Girard Sharp has been at the forefront of VPPA cases, including pending cases involving the Facebook Pixel. *See, e.g.*, *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.); *Haines v. Fandom, Inc.*, No. 3:22-cv-04423 (N.D. Cal.); *Kramer v. Vice Media LLC*, No. 1:22-cv-04915 (E.D.N.Y); *Hughley v. Healthline*, No. 4:22-cv-05059 (N.D. Cal.). In *Patreon*, for example,

---

[3] Additional information regarding Mr. Klinger and his firm is set forth in the Biography attached hereto as Exhibit A.

Girard Sharp has briefed a motion to dismiss addressing all aspects of the VPPA in this context, including defending the statute against a constitutional attack under the First Amendment. *See Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.), ECF No. 31.

Girard Sharp has successfully represented aggrieved classes both in this District and across the country.  For instance, serving as co-lead counsel, Girard Sharp obtained nationwide class certification in *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 WHP, 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012), and currently serves as court-appointed co-lead counsel for advertiser plaintiffs in *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y.).  Judge Gershon in *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 40 (E.D.N.Y. 2020) found Girard Sharp and its co-counsel "extremely qualified and able to represent the certified class."

Girard Sharp's track record in privacy cases speaks for itself. For example:

- Girard Sharp is sole lead counsel for 22 million federal government employees and job applicants whose private information was hacked and taken from U.S. Office of Personnel Management databases. After the district court dismissed the class claims on standing and immunity grounds, Girard Sharp coordinated a team effort among plaintiffs' counsel that resulted in a complete reversal. *In re U.S. Office of Pers. Mgt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019). On remand, Girard Sharp negotiated a settlement, preliminarily approved in June 2022, that will return minimum payments of $700 to eligible claimants who suffered economic harm under the Privacy Act of 1974— which, like the VPPA, provides for statutory damages to victims.

- In *In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.), Girard Sharp served as co-lead counsel for a class of computer purchasers whose online activities were

surreptitiously monitored by pre-installed software that degraded the computers'
performance, operating continuously in the background as it analyzed browsing activity
and injected ads into visited webpages. Plaintiffs brought claims under the Computer
Fraud and Abuse Act and other consumer laws. The court certified a nationwide indirect
purchaser class for trial. 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016). Girard Sharp later
developed a claims process to allocate settlement funds, with each class member able to
choose between (1) completing a short online claim form to receive a cash award for
every purchased computer, or (2) submitting receipts or other documentation to recover
sums expended as a result of the spyware being on the computer. *See* 2019 WL 1791420.

- In *In re Yahoo! Mail Litigation*, No. 5:13-cv-4980-LHK (N.D. Cal.), Girard Sharp served
  as co-lead counsel for a class of non-Yahoo Mail subscribers who alleged Yahoo illegally
  intercepted their e-mails to Yahoo Mail subscribers. The Honorable Lucy H. Koh granted
  class certification for injunctive relief under the Stored Communications Act and other
  laws, 308 F.R.D. 577 (N.D. Cal. 2015), and, following cross-motions for summary
  judgment, the matter was successfully resolved.

Girard Sharp also has succeeded at trial; Mr. Polk, joined by partner Dena Sharp,
obtained a $14.75 million bellwether verdict in June 2021 for five Pacific Fertility Center
patients who lost eggs and embryos as a result of a cryopreservation tank failure. The jury found
the defendant tank manufacturer liable on all claims. *See In re Pacific Fertility Center Litig.*, No.
3:18-cv-01586-JSC (N.D. Cal.). Further details on Girard Sharp's attorneys and representative
cases are provided in the Firm Resume, attached as Exhibit 3 to the Arisohn Declaration.

Since filing the *Roby* action, Girard Sharp has worked cooperatively with *Johnson*
counsel on early case management, including preparing consolidation papers and promoting an

orderly process for appointment of interim class counsel. Girard Sharp continues to work alongside *Johnson* counsel to prepare a consolidated complaint.

With respect to proposed Liaison Counsel, for over five decades, Lowey Dannenberg, P.C., has successfully prosecuted class actions against some of the largest corporations in the world and achieved substantial recoveries on behalf of consumers. In its capacity as lead or co-lead counsel Lowey has recovered billions of dollars on behalf of class members through cases in this District, including $491.5 million in *Sullivan v. Barclays plc*, Case No. 13-cv-02811 (PKC) (S.D.N.Y.), $307 million in *Laydon v. Mizuho Bank, Ltd.*, Case No. 12-cv-03419 (GBD) (S.D.N.Y.) and $386 million in *In re GSE Bonds*, Case No. 19-cv-1704 (S.D.N.Y.). *See also* Arisohn Decl. Ex 6.

Christian Levis is a partner in Lowey's New York office and head of the firm's data breach and privacy practice group. An avid computer programmer with experience developing both iOS and Android apps, Mr. Levis is involved in leading the prosecution of several consumer privacy actions against some of the largest technology companies in the world. *See, e.g., In re Google Assistant Priv. Litig.*, No. 5:19-cv-04286 (N.D. Cal.) (class action on behalf of Google Assistant Enabled Device users whose conversations were obtained by Google, LLC and shared with third parties without users' consent); *Lopez v. Apple, Inc.*, Case No. 19-cv- 04577 (N.D. Cal.) (class action on behalf of Siri-enabled device users whose conversations were obtained by Apple, Inc. and shared with third parties without users' consent); *Wesch v. Yodlee*, No 3:20-cv-05991 (N.D. Cal) (class action on behalf of tens of millions of individuals whose financial data was collected without their consent by one of the largest data aggregators in the United States); *Frasco v. Flo Health Inc.*, No. 3:21-cv-00757-JD (N.D. Cal.) (alleging claims against Facebook, Google, and others arising from unauthorized disclosure of millions of users health data by the

Flo period and pregnancy tracking app).

Mr. Levis has also leveraged his technological experience as lead or co-lead counsel in class actions on behalf of consumers and financial institutions adversely impacted by deficient data security and handling practices. This includes major payment card data breaches. *See In re Wawa Data Security Litigation*, Case No. 19-cv-06019 (E.D. Pa.) (ECF No. 120) (appointing Mr. Levis as interim co-lead counsel on behalf of class of financial institutions in data breach compromising tens of millions of individuals personal information); *In re Rutter's Inc. Data Security Breach Litigation*, Case No. 20-cv-00382 (M.D. Pa.) (ECF No. 12) (appointing Mr. Levis interim co-lead counsel on behalf of consumers impacted by data breach at Rutter's gas station and convenience store locations). A well as breaches involving malware infected mobile apps and websites. *See Barr v. Drizly, LLC,* No. 1:20-cv-11492 (D. Mass) (securing $7.1 million settlement in a data breach class action against one of the largest alcohol delivery companies); *Hozza v. PrimoHoagies Franchising, Inc.*, Case No. 20-cv-04966 (D.N.J.) (recovering up to $14.5 million for cardholders impacted by data breach resulting from malware on mobile ordering system).

The proposed Class will be well served by the Firms' experience in similar litigation.

## III.   THE FIRMS ARE FAMILIAR WITH THE APPLICABLE LAW AND FACTS

As set forth above, the attorneys at the Firms have a long track record of successfully litigating large-scale consumer and complex actions and are also familiar with this Court's rules and procedures.  They are also currently litigating numerous other claims involving the Facebook Tracking Pixel, most of which involve claims under the VPPA:

a)  *Rickwalder v. Meta Platforms*, No. 21-CV-383231 (Super. Ct., Santa Clara Cnty.)

b)  *Suufi v. MediaLab.AI, Inc.*, No. 2:22-CV-00979-SB-KS (C.D. Cal.)

c)  *Lebakken v. WebMD, LLC*, No. 1:22-cv-00644-TWT (N.D. Ga.)

    d)  *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass.)

    e)  *McDaniel v. Home Box Office, Inc.*, No. 1:22-cv-01942-VEC (S.D.N.Y.)

    f)  *Carter v. Scripps Networks, LLC*, No. 1:22-cv-02031-PGG (S.D.N.Y.)

    g)  *Cole v. Quest Diagnostics, Inc.*, No. 1:22-cv-00892-JLT-SKO (E.D. Cal.)

    h)  *Aldana v. Gamestop, Inc.*, No. 1:22-cv-07063-VSB (S.D.N.Y.)

    i)  *Quinto v. The Regents of the University of California*, No. 3:22-cv-04429-JD (N.D. Cal.)

    j)  *Ramirez v. Military Advantage, Inc.*, No. 1:22-cv-10892-WGY (D. Mass.)

    k)  *Graham v. Bloomberg L.P.*, No. 1:22-cv-07015-VSB (S.D.N.Y.)

    l)  *Parcell v. Paramount Global Corp.*, No. 1:22-cv-03666 (N.D. Ill.)

    m) *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.)

    n)  *Kramer v. Vice Media LLC*, No. 1:22-cv-04915 (E.D.N.Y)

These cases involve similar technology and claims under the VPPA or other privacy laws.  As such, the Firms are intimately familiar with the factual and legal issues likely to arise in this action.  The knowledge counsel have gained through this experience will benefit the class because counsel can anticipate arguments and work efficiently instead of reinventing the wheel.

## IV. THE FIRMS WILL COMMIT ALL NECESSARY RESOURCES TO REPRESENTING THE CLASS

    The final 23(g) factor, which concerns the resources counsel will commit to the case, also strongly supports appointing the Firms—which are well-established successful law firms with the resources and personnel necessary to pursue this case.  We have already demonstrated the commitment and ability to devote the necessary resources to pursue this action to a successful result.  The Firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases which will benefit Plaintiffs and class members.

    Notably, other courts have opined on the resources and commitment of Bursor in

representing clients in class action cases.  For instance, Chief United States District Judge

Morrison C. England, Jr. of the Eastern District of California appointed Bursor & Fisher as

interim class counsel in *Melgar v. Zicam, LLC*, No. 2:14-cv-00160-MCE-AC (E.D. Cal. Oct. 29,

2014), noting that the firm Fisher "has extensive experience representing plaintiffs in large class

actions, both in negotiating settlements and litigating through trial."  Arisohn Decl. Ex. 2, at 3.

Judge England further commented that "Bursor & Fisher is a well-established, reputable firm

that is up to handling the challenges of this litigation and is capable of committing the requisite

resources to doing so.  The Court is confident that Bursor & Fisher will fairly and adequately

represent the interests of the class."  *Id.* (citation omitted).  Similarly, in appointing Bursor &

Fisher as interim class counsel in *Rodriguez v. CitiMortgage*, Case No. 1:11-cv-4718 (PGG)

(S.D.N.Y. Nov. 14, 2011), Judge Gardephe recognized that Bursor & Fisher is a "well-

established law firm" that "ha[s] the resources and personnel necessary to carry out large-scale

class action litigation."  Arisohn Decl. Ex. 3, at 3.  Judge Gardephe further noted that he had "no

reason to doubt that [counsel] will provide the necessary resources going forward to litigate this

case."  *Id.*

     Likewise, courts have commented on Mr. Klinger's (of Milberg) commitment to the class

members he represents. In a recent nationwide privacy class settlement hearing in the U.S.

District Court for the Northern District of California, Judge Richard Seeborg personally

commended Mr. Klinger (of Milberg) for "quite a substantial recovery for class members."

Judge Seeborg further stated he could not recall any class action case where "the amounts going

to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

     Similarly, in approving a settlement for consumers that Girard Sharp negotiated during

trial, the court wrote: "It is abundantly clear that Class Counsel invested an incredible amount of

time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail. . . . Simply put, Class Counsel earned their fees." *Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cty.); *see also Billitteri*, 2011 WL 3585983, at *7-8 ("Class counsel has incurred significant expenses and provided thousands of hours of diligent legal work on this case with the very real possibility of no recovery . . . . Class counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation."); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *10 (N.D. Cal. Aug. 25, 2016) (stating that "Class Counsel achieved these benefits" after prosecuting the case "in an effective and cost-efficient manner.").

If appointed interim class counsel, the Firms will continue to apply the same resources and effort to this case that they have applied in the past.

## **CONCLUSION**

Thus, Plaintiffs respectfully request that the Court appoint Bursor, Milberg, and Girard as co-lead interim class counsel and Lowey as liaison counsel.

Dated:  September 13, 2022

Respectfully submitted,

By:      */s/ Joshua D. Arisohn*
                    Joshua D. Arisohn

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Philip L. Fraietta
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jarisohn@bursor.com
            pfraietta@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger*

227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
gklinger@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
nsuciu@milberg.com

**GIRARD SHARP LLP**
Adam E. Polk*
Simon Grille*
Jessica Cook*
Kimberly Mac*ey
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com
kmacey@girardsharp.com

*Pro Hac Vice*

*Proposed Interim Class Counsel*

**LOWEY DANNENBERG, P.C.**
Christian Lewis
Amanda Fiorilla
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Proposed Liaison Counsel*