**BURSOR & FISHER**
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

PHILIP L. FRAIETTA
Tel: **646.837.7150**
Fax: **212.989.9163**
pfraietta@bursor.com

January 17, 2023

*Via ECF*

The Honorable Analisa Torres
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10017

Re:   *Johnson v. Insider Inc.*, Case No. 22-cv-06529-AT (S.D.N.Y.)

Dear Judge Torres:

     Plaintiffs Sanchez Johnson, Darmel Roby, Jennifer Juenke, Jamie Spritzer, Timothy Stokes and the proposed Class (collectively, "Plaintiffs") respond to Defendant Insider Inc.'s ("Business Insider," "Insider," or "Defendant") January 9, 2023 letter setting out Defendant's position for its anticipated Motion to Dismiss. (ECF No. 33) ("Ltr."). Insider's letter advances six arguments in favor of dismissal, none of which has merit.

## I. Background

     Plaintiffs bring this suit against Defendant for knowingly disclosing their personally identifiable information ("PII") to a third party, Facebook. Defendant owns and operates a website, insider.com, which hosts and disseminates "thousands of videos," with a section "dedicated to video content." (ECF No. 27) ("Compl.") ¶ 53. Plaintiffs are consumers who subscribed to Defendant's website either through a newsletter or paid subscription. *See id.* ¶¶ 21, 26, 31, 36, 41. Unbeknownst to Plaintiffs, Defendant "uses the Meta Pixel to purposely track, record, and transmit its digital subscribers' interactions with www.insider.com to Meta." *Id.* ¶ 4. "The information that Insider shares with Meta includes, at a minimum, [Insider's] subscribers' Facebook ID ('FID') and the titles of the prerecorded video content that the user requested." *Id.* ¶ 6. By disclosing this information, Defendant violated the plain terms of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").

## II. Defendant is a "Video Tape Service Provider"

     The VPPA defines a "video tape service provider" ("VTSP") as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Plaintiffs allege that "Insider is a video tape service provider because it creates, hosts, and disseminates thousands of videos on www.insider.com, and a section of its website is dedicated to video content." Compl. ¶ 53. As numerous courts have held, that allegation sufficiently establishes that Defendant's prerecorded video clips are VPPA-protected materials. *See, e.g.*, *Belozerov v. Gannett Co., Inc.*, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022) (holding that USA Today is plausibly a video tape service provider because it provides prerecorded video

content on its website); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (reviewing a nearly identical allegation and finding it "reasonable to infer that Plaintiff consumed prerecorded content of the variety specifically identified in the Complaint"); *Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *3 (N.D. Ga. Nov. 4, 2022) (finding plaintiff adequately alleged that defendant "engaged in the business of delivering prerecorded audio-visual materials to consumers via its e-newsletter and its website"); *Ambrose v. Boston Globe Media P'ners LLC*, 2022 WL 4329373, at (D. Mass. Sept. 19, 2022) ("[T]he Globe is engaged in the business of delivering various types of video content to its digital subscribers").

Defendant argues that "the Complaint does not identify any specific videos on Insider's website, let alone allege that any such videos are 'similar' to prerecorded video cassette tapes[.]" Ltr. at 2. But nothing in the VPPA requires allegations of specific videos, and "Congress's use of the phrase 'similar audiovisual materials' indicates that the definition is medium neutral; the defendant must be in the business of delivering content, but that content need not be in a particular format." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *see also In re Hulu Priv. Litig.*, 2012 WL 3282960, at *5-6 (N.D. Cal. Aug. 10, 2012). That the delivery of prerecorded video content, regardless of its nature, is subject to the VPPA is confirmed by the Senate Report, which states that the VPPA applies to "golf videos" the same as it does to "Star Trek videos." S. Rep. 100-599, at 13. Defendant's letter ignores that Congress amended the VPPA in 2012 and *declined* to limit the statute's reach to traditional video rental stores and video cassette tapes, even after "consider[ing] the impact of the VPPA on the electronic distribution of videos." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488 (1st Cir. 2016). In short, Defendant's prerecorded video clips fit comfortably within the scope of the VPPA and its delivery of such content renders it a VTSP.

Defendant maintains that it cannot be a VTSP with the factual assertion that "it is not 'engaged in the business' of providing video content." Ltr. at 2. The term "'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *In re Vizio, Inc.*, 238 F. Supp. 3d at 1221. Defendant's website contains "thousands of videos," which it "uses . . . as a means of increasing its revenue through advertisements[.]" Compl. ¶¶ 53-54. Consistent with the case law, these allegations plausibly establish that delivering video content is a focus of Defendant's business. *Belozerov*, 2022 WL 17832185, at *3 (rejecting the argument that "USA Today is a news provider and thus not primarily 'engaged in the business . . . of rental, sale, or delivery of prerecorded cassette tapes or similar audio visual materials'"); *Ambrose*, 2022 WL 4329373, at *2 (plaintiff plausibly alleged that defendant "engages in the business of delivering audio visual materials, and that its business is significantly tailored to serve that purpose") (internal quotations omitted). Thus, Plaintiffs sufficiently allege that Defendant is engaged in the business of delivering prerecorded video content.

### III. Plaintiffs are Insider Subscribers and Therefore Consumers

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 28 U.S.C. § 2710(a)(1). Being a subscriber only requires "demonstrat[ing] an ongoing commitment or relationship with" Insider. *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017). Insider contends that Plaintiffs cannot be subscribers because their complaint is not particularized and they "provided neither the email address purportedly used to register nor the date such services began." Ltr. at 3. To

survive a Rule 12(b)(6) motion, however, a complaint need only contain a statement of a claim that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  Plaintiffs have cleared this hurdle.  *See* Compl. ¶¶ 21, 26, 31, 36, 41 (alleging how Plaintiffs subscribed to Defendant's website).  Any fact-based defense, whether based on Defendant's records or otherwise, is properly raised at a later stage in litigation, with the benefit of discovery.

Defendant further claims that Plaintiffs cannot be consumers "because they did not rent, purchase, or subscribe to any video or video-related service from Insider." Ltr. at 3 n.2.  The phrase "goods or services" has an ordinary, everyday meaning, and that meaning includes digital subscriptions and newsletters.  *See Lebakken*, 2022 WL 16716151, at *3 (observing that "the phrase 'goods or services' is generally construed broadly to encompass 'all parts of the economic output of society,'" and holding that the plaintiff "plausibly pleaded that WebMD's e-newsletter constitutes a good or service").  While Insider insists that Plaintiffs must subscribe to a "video or video-related service" in particular (Ltr. at 3 n.2), the VPPA imposes no such requirement. *Lebakken*, 2022 WL 16716151, at *3 ("[T]he plaintiff must subscribe to 'goods or services from a video tape service provider,' not a video service as WebMD attempts to frame the issue.").

### IV. Plaintiffs Have Article III Standing

Unreasonable disclosure of private facts has long been a traditional harm giving rise to Article III standing.  *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information").  The VPPA protects private information—citizens' video-viewing history—from unauthorized disclosure and creates a private right of action for any "person aggrieved by any act of a person in violation of" the statute.  18 U.S.C. § 2710(c).  Plaintiffs have Article III standing because they suffered a concrete injury when their private information was disclosed to third parties without permission.  *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017) (VPPA protects "a consumer's *substantive* privacy interest in his or her video-viewing history" and the "*substantive* right to privacy . . . suffers any time a video service provider discloses otherwise private information.") (emphasis in original).

### V. Defendant Disclosed Plaintiffs' Personally Identifiable Information

Defendant fares no better in arguing that it did not actually disclose Plaintiffs' personally identifiable information. *See* Ltr. at 4.  The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).  A Facebook ID is "equivalent to a name—it stands in for a specific person, unlike a device identifier." *Robinson v. Disney Online,* 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2016).

Because it programmed Facebook's Pixel onto its website, Defendant caused Plaintiffs' Facebook IDs to be shared with Facebook, Compl. ¶¶ 6–7, 65–66, along with information about the videos that Plaintiffs watched, *id.* ¶¶ 4, 8, 64–66.  No more is required to violate the VPPA. Defendant need not know Plaintiffs' FIDs to be liable, but instead need only implement Meta's Pixel, which programmatically connects Plaintiffs' FIDs with their video-viewing history and

transmits that information to Meta. *See, e.g.*, *Czarnionka*, 2022 WL 17069810, at *3; *Belozerov*, 2022 WL 17832185, at *4.

### VI. Defendant's Conduct was Knowing

Rule 9 provides that knowledge may be alleged generally. A defendant discloses PII knowingly when it has "consciousness of transmitting the private information." *In re Hulu*, 86 F. Supp. 3d at 1095. Defendant's knowledge arguments lack support and ignore the factual allegations that it acted deliberately *when it programmed* the Pixel (a software tool that tracks and gathers user information, including FIDs) onto the website it controlled.

As to motive, Defendant placed the Pixel onto its website so it could optimize its promotions to users on Facebook. To use the Pixel, Defendant "tells Meta which website events it wants to track . . . and Meta provides corresponding Meta Pixel code." Meta in turn offers financial benefits to companies like Insider in exchange for this personal data. Compl. ¶ 70 ("[T]he data collected through the Meta Pixel is provided to Insider in Meta's Events Manager, as well as tools and analytics to reach individual digital subscribers through Facebook ads. Insider can also use this information to create 'custom audiences' through Meta."). Thus, by integrating and configuring the Pixel, Defendant deliberately transmitted Plaintiffs' private information. *See In re Hulu*, 86 F. Supp. 3d at 1095; *Czarnionka*, 2022 WL 17069810, at *4.

### VII. Defendant Disclosed Plaintiffs' Personally Identifiable Information

Finally, Insider's Letter incorrectly argues that Plaintiffs' unjust enrichment claim should be dismissed because the claim is "entirely derivative of its VPPA claim." Ltr. at 2. The law is clear that "[t]wo claims are duplicative of one another [only] if they 'arise from the same facts and do not allege distinct damages.' " *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 50 A.D.3d 667, 854 N.Y.S.2d 536, 538 (2008)). Plaintiffs allege unjust enrichment in the alternative, as permitted by Rule 8(d). Plaintiffs base that claim on "Insider's practice of sharing users' personal information and viewing content with Meta without proper consent, along with its failure to disclose this practice, caus[ing] Insider to profit from advertisement revenue it would otherwise not have received." Compl. ¶ 104. Therefore, even if their VPPA damage claims were to fail, Plaintiffs still could obtain "equitable recovery under a theory of unjust enrichment." *Nuss v. Sabad*, 2016 WL 4098606 (N.D.N.Y. July 28, 2016); *see Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *34 (S.D.N.Y June 22, 2020) (upholding unjust enrichment claim where, "if the tort claims fail, the unjust enrichment claim could partially 'remedy the defects.'").

Respectfully submitted,

Philip L. Fraietta, Plaintiff's Counsel