

1900 M Street NW, Suite 250, Washington, DC 20036
(202) 296 3585

Jeffrey G. Landis
(202) 706-5203
jeff@zwillgen.com

July 12, 2023

*Via ECF & Email*

The Honorable Analisa Torres
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *In re Insider, Inc. Pixel-VPPA Litigation*, Case No. 22-cv-06529-AT

Dear Judge Torres:

    We represent Defendant Insider, Inc. in the above-captioned matter and write to request leave to move for an order compelling arbitration of only newly added Plaintiff Emma Mendoza's claim against Insider.[1] As explains below, Plaintiff Mendoza, seemingly in an attempt to bolster her status as an Insider "subscriber," purchased a subscription to Insider's website right before she was added as a plaintiff in this matter. When she did so she agreed to the arbitration provision Insider added to its Terms of Service in February 2023. That arbitration provision requires Ms. Mendoza to arbitrate this VPPA claim against Insider.

I.    **Relevant Background**

    As the Court is aware, prior to the filing of the First Amended Complaint ("FAC") there was only one plaintiff remaining in this matter, Jamie Spritzer. Ms. Spritzer had claimed in the then operative complaint that she was a subscriber to Insider's website, but in fact, she was not. *See* ECF No. 51 at 2. Rather, she had signed up only to receive a free newsletter from Insider. *Id.* The parties informed the Court of this issue via a letter from plaintiffs' counsel dated June 13. *Id.* That same letter explained that during the discussions about Ms. Spritzer's relationship with Insider, Plaintiffs' counsel informed Insider that they had been retained by a second plaintiff who they wished to add to the complaint and sought Insider's consent to add such plaintiff. *Id.* Insider agreed to the addition of the new plaintiff. Right after Insider so agreed, Plaintiffs' counsel identified the new plaintiff as Ms. Mendoza and provided Insider with her email address.

    On June 28, 2023 Plaintiffs filed the FAC adding Ms. Mendoza as a new plaintiff. According to Insider's records, however, on June 8, 2023 (the same day she was identified to Insider as the new plaintiff), Ms. Mendoza purchased for the first time a paid subscription to

---

[1] Insider understands that Your Honor's individual rules exempt petitions to compel arbitration from the pre-motion letter requirements under Individual Rule III.A. Because it seeks to file a motion (as opposed to a petition) to compel arbitration, however, Insider is submitting this pre-motion letter to ensure compliance with Your Honor's Rules.

Insider's website.  Prior to that she had only a free Insider account. In signing up for a paid subscription, she agreed to Insider's February 2023 Terms of Service (the "Terms").  Those Terms were updated in February 2023 to add an arbitration provision requiring individual arbitration of "all claims and disputes that in any way relate to . . . or that may arise out of the interpretation, applicability, performance, or enforcement of, these Terms of Service," including use of Insider's websites, products, or services.  Insider, Terms of Service § 17(a)-(b) (attached as Ex. A).  Under those new terms, Ms. Mendoza had 30 days—until July 8, 2023—to opt out of her agreement to arbitrate by following the procedures set forth in the Terms.  *Id.* § 17(g).  She did not do so and is therefore required to arbitrate her VPPA claim against Insider.

## II.    Ms. Mendoza's Claims Are Subject to Arbitration

Ms. Mendoza's claims belong in arbitration.  The Federal Arbitration Act ("FAA") instructs that, upon a motion by either party to an arbitration agreement, courts must compel arbitration "in accordance with the terms of the agreement."  9 U.S.C. § 4.  Courts faced with a motion to compel arbitration must engage in a two-step inquiry.  The first step is determining if the plaintiff validly assented to the arbitration agreement.  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).  The second step is determining "whether the dispute falls within the scope of the arbitration agreement."  *Id.* at 74.  Under the arbitration agreement, the parties can delegate this second step to the arbitrator, rather than the court.  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529-31 (2019).  If not delegated, courts resolve any "doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Here, Ms. Mendoza would have been required to agree to the Terms of Service and arbitration clause therein to become a paid Insider subscriber.  Thus, arbitration of her claims should be compelled.

### A.  Ms. Mendoza Agreed to Arbitrate

To purchase an Insider digital subscription, Ms. Mendoza would have had to go through an account creation process that clearly and conspicuously linked to Insider's Terms and notified Ms. Mendoza that she was accepting those Terms by signing up.  An agreement to arbitrate exists where "the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law."  *Meyer*, 868 F.3d at 76.  For internet-based contracts, courts look to the design and content of the relevant interface.  *Id.* at 75.  Courts "routinely" uphold clickwrap agreements, which require the user to click a button like "I agree" when presented with a link to the terms of use.  *Id.*

Insider's contract formation process readily satisfies New York law.  To sign up for a paid subscription, the user first must enter an email address and payment details.  Then, the user is taken to a simple webpage that is titled "Let's complete your account" and directs the user to create a password.  Under that single text field is a "Create Account" button and the accompanying statement, "I agree to receive newsletter and marketing emails from Insider Inc., its affiliates, and accept our terms of use and privacy policy."  This sentence appears immediately below the "Create Account" button about halfway down the page, and is visible without additional scrolling.  It is also in black font against a white background, while the words "terms of use" are further emphasized in blue font.  By clicking the link, Ms. Mendoza would have been able to view the full text of Insider's Terms and arbitration agreement therein.  The

arbitration agreement is disclosed in those Terms' opening paragraph, using all capital letters. In sum, Insider's requested motion will show the account creation screen is uncluttered and links directly to the arbitration agreement, ensuring the Terms are clearly and conspicuously presented to each user before account creation.

Courts routinely find similar website notices provide reasonable notice. The Second Circuit in *Meyer* found that a user agreed to the arbitration clause in a terms of service where the terms were hyperlinked just below the "Register" button on the sign-up page. 868 F.3d at 78. District courts in this district have concluded similar. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835-41 (S.D.N.Y. 2012) ("Sign up" button located directly above notice that read, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"); *see also, e.g.*, *Hamm v. Capsule Corp.*, No. 22-CV-05435 (JSR), 2022 WL 4468028, at *2 (S.D.N.Y. Sept. 26, 2022) ("Continue" button located immediately above notice that read, "By clicking continue, I accept the Capsule Terms of Service, Privacy Policy, and HIPAA Policy"); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 453 (E.D.N.Y. 2019) ("Submit Order" button located above notice that read, "By placing this order, you are agreeing to our terms and conditions"); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *5 (S.D.N.Y. Nov. 20, 2017) ("Submit Order" button located immediately above a notice that read, "By making this purchase you are agreeing to our Terms of Use"), *report and recommendation adopted as modified*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).

Accordingly, Ms. Mendoza cannot reasonably dispute that she agreed to the Terms of Service and the binding arbitration agreement therein.

### B.  Ms. Mendoza Agreed to Delegate Questions of Arbitrability

Because she validly assented to Insider's Terms and the arbitration agreement, Ms. Mendoza's claims are subject to mandatory arbitration. But even if she disputes that the arbitration agreement does not apply to her claims, such a dispute must be resolved by the arbitrator. A court "may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530. The parties may delegate to an arbitrator such threshold questions as long as the arbitration agreement does so in "clear and unmistakable" language. *Id.*

Here, the Terms provide that "these Terms of Service . . . (collectively, 'Claims') shall be resolved exclusively through binding arbitration" and that "'Claims' includes . . . claims arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of Service and this Arbitration Agreement, or that all or any part thereof are void or voidable or whether the claim is subject to arbitration." Insider, Terms of Service § 17(b). This language is clear and unmistakable evidence of delegation. *See, e.g.*, Order, *Parcell v. Paramount Global*, No. 22-cv-03666 (N.D. Ill. June 27, 2023), ECF No. 47 (referring VPPA case to arbitrator to determine arbitrability); *Hidalgo v. Amateur Athletic Union of United States, Inc.*, 468 F. Supp. 3d 646, 652 (S.D.N.Y. 2020) (delegating "ANY AND ALL QUESTIONS OF ARBITRABILITY, IF ANY").

Moreover, the Terms calls for "arbitration [to] be administered by the National Arbitration and Mediation ('NAM')." Insider, Terms of Service § 17(d). Where "a written agreement between the parties designates NAM as the Administrator for the arbitration," the NAM Comprehensive Rules and Procedures apply and Rule 17(B) of those rules state that "[t]he

Arbitrator(s) shall have the authority to determine jurisdiction and arbitrability including, but not limited to, any issue regarding the validity, existence, formation or scope of the agreement under which Arbitration is being sought."[2] This is an additional, independent reason why the Court should delegate any questions of arbitrability that Ms. Mendoza might raise.

### C. Ms. Mendoza's Claims Fall Within the Scope of the Arbitration Agreement

The Court need not reach this issue but, even if it does, Insider's Terms cover Ms. Mendoza's claims and mandates that they be resolved in arbitration. The FAA generally requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). In the Second Circuit, courts are to construe broadly worded clauses to express a presumption of arbitrability, and arbitration of even collateral matters will be ordered. *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002).

Here, Insider's arbitration clause is broadly worded to cover her VPPA and unjust enrichment claims. Ms. Mendoza agreed to arbitrate "all claims and disputes that in any way relate to a dispute with Insider Inc. pursuant to, or that may arise out of the interpretation, applicability, performance, or enforcement of, these Terms of Service." Insider, Terms of Service § 17(b). This includes any dispute "between you and Insider Inc. with respect to your use of the Sites and/or any online products or services owned, controlled or offered by Insider Inc. that post a link to and are governed by these Terms of Service." *Id.* § 17(a). Such language is the definition of broad clause that covers Ms. Mendoza's claims. *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (finding "the paradigm of a broad clause" to be a clause that "[a]ny claim or controversy arising out of or relating to th[e] agreement" must be arbitrated). Here, Ms. Mendoza's claims arise from Insider's alleged disclosure of video viewing activity on Insider's website, and thus arise directly out of her use of Insider's site and the governing Terms. *See generally* FAC.

\*    \*    \*

For the above reasons, Insider respectfully requests that the Court permit the filing of a motion to compel arbitration of Ms. Mendoza's claims.

Sincerely,

*/s/ Jeffrey Landis*

Jeffrey G. Landis

---

[2] Available at https://www.namadr.com/resources/rules-fees-forms/ (last visited July 11, 2023).